UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ALROY RICHARDS,

                          Plaintiff,

            - against -

CITY OF NEW YORK AND MR. ROSARIO,

                          Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-7074 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiff Alroy Richards ("Plaintiff" or "Richards"), proceeding *pro se* and *in forma pauperis* ("IFP"), (Dkt. 4), brings this suit against the City of New York (the "City") and Police Officer Joseph Rosario ("Defendant Rosario") (together, "Defendants"), alleging violations of various constitutional amendments and other state law claims, all stemming from a traffic stop on July 8, 2023.  (Am. Compl., Dkt. 19, at ECF[1] 9–10; Dkt. 19 (providing Defendant Rosario's full name).)  Since filing the complaint, Plaintiff has also alleged various common law causes of action as well as violations of the New York City Human Rights Law ("NYCHRL").  (Order to Show Cause ("OTSC") Resp., Dkt. 21-1.)  On March 25, 2025, Defendants filed a letter motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6).[2]  (Mot., Dkt. 22.)  For the reasons discussed below, the Court grants Defendants' motion to dismiss and dismisses Plaintiff's claims in their entirety.

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] The Court ordered Defendants to brief their motion to dismiss via letter-motion. (2/12/2025 OTSC (ordering Defendants to file a letter brief in support of its motion to dismiss)); *see* Loc. Civ. R. 7.1(e) (generally prohibiting dispositive matters to be brought by letter-motion "unless authorized by . . . order issued in a particular case").

**BACKGROUND**

I.  **Factual Allegations**[3]

Plaintiff is a "[B]lack, immigrant" man who alleges that he has made "numerous complaints [and] filed related lawsuits" against the City and the New York City Police Department ("NYPD"). (Am. Compl., Dkt. 19, at ECF 9 (emphasis removed[4]).) Plaintiff alleges that, in part because of these complaints, he has been subject to "careful targeting," profiling, and retaliation. (*Id.* at ECF 10.) Plaintiff alleges that he "was . . . followed by the police[] in unmarked vehicles."[5] (*Id.* at ECF 8.)

On July 8, 2023, at 7:42 pm,[6] and allegedly as part of this "intimidat[ion]" campaign, several members of the NYPD, including Defendant Rosario, conducted a traffic stop of Plaintiff in Brooklyn, New York. (*Id.* at ECF 8–9.) Plaintiff alleges that he was driving when "all of a sudden . . . the police teams pulled up[] and . . . accused the Plaintiff of traffic violations." (*Id.* at ECF 8.) The NYPD "questioned [Plaintiff] as to his driving [past] a garbage truck as well as a black SUV," (*id.* at ECF 35), which had caused Plaintiff to drive "into oncoming traffic," (*id.* at

---

[3] "In deciding a Rule 12(b)(6) motion" a court may properly consider, *inter alia*, "the facts alleged in the pleadings, [as well as] documents attached as exhibits or incorporated by reference in the pleadings." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)). In addition, because of the liberal construction afforded to *pro se* papers, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [their] papers opposing the motion." *Moss v. Bd. of Educ.*, No. 23-CV-6571 (JS) (SIL), 2025 WL 1548945, at *6 (E.D.N.Y. May 30, 2025) (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

[4] Where applicable, the Court has removed emphasis from, and made capitalization alterations to, the remaining citations to Plaintiff's filings.

[5] The Court notes that Plaintiff elsewhere alleges that the vehicles were "marked." (Am. Compl., Dkt. 19, at ECF 35.)

[6] Plaintiff states that his traffic stop occurred at 7:42 pm rather than 7:35 pm, as stated on the relevant traffic summons. (*Id.* at ECF 8.)

ECF 18). Plaintiff confirmed he had passed a garbage truck that was moving slowly. (*Id.*) Plaintiff then provided the paperwork requested by the NYPD and was told to remain in his vehicle, which he did for nearly ten minutes. (*Id.* at ECF 9.) The NYPD then handed him a traffic court summons for reckless driving. (*Id.*; *see also id.* at ECF 18 (showing reckless driving charge).) Plaintiff responded to state court pursuant to his summons on July 27, 2023, where his traffic violation was dismissed pursuant to New York Criminal Procedure Law ("NYCPL") § 170.55. (*Id.* at ECF 9, 14.)

Plaintiff subsequently filed a personal injury claim (the "Claim") with the New York Controller's Office ("Controller's Office") on October 5, 2023, for claims including the "illegal traffic stop," "unlawful detention/imprisonment," and "illicit profiling." (*Id.* at ECF 33, 35, 38.) Plaintiff sought "garden variety" emotional damages. (*Id.* at ECF 36.) The Controller's Office confirmed receipt of Plaintiff's Claim on October 10, 2023. (*Id.* at ECF 31.) On December 10, 2023, and March 22, 2024, Plaintiff reached out to the Controller's Office to follow up on his Claim. (*Id.* at ECF 40–42.) On April 11, 2024, the City's counsel contacted Plaintiff to schedule a 50-h hearing[7] for May 22, 2024, regarding the incident underlying Plaintiff's Claim. (*Id.* at 43–46.) On June 13, 2024, Plaintiff reached out to the Controller's Office to discuss settlement.[8] (*Id.* at 47.)

---

[7] A 50-h hearing is one pursuant to Section 50-h of the New York General Municipal Laws, which outlines the process for examining claims against municipal entities. N.Y. Gen. Mun. L. § 50-h.

[8] The record does not indicate whether the City responded to Plaintiff's settlement invitation. (*See generally* Am. Compl., Dkt. 19.)

3

## II. Procedural History

Plaintiff filed his original Complaint in this case on October 4, 2024. (Compl., Dkt. 1.) On January 21, 2025, the City filed a letter requesting a pre-motion conference ahead of its anticipated motion to dismiss. (Dkt. 14.) On February 3, 2025, Defendant Rosario filed his answer to the Complaint. (Dkt. 16.) On February 12, 2025, the Court denied the pre-motion conference request as unnecessary and instead set an expedited briefing schedule "for the City's motion to dismiss Plaintiff's *Monell* claims." (2/12/2025 Dkt. Order); *see also Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). The Court also noted "that there does not appear to be any plausible basis for any of Plaintiff's claims, including what appear to [be] claims against Defendant Rosario under 42 U.S.C. § 1983 ("Section 1983") for violations of the 4th and 14th Amendments," and ordered Plaintiff to show cause by March 11, 2025, "why his claims against Defendant Rosario should not be dismissed under [Rule] 12(b)(6) for failure to state claims on which relief may be granted." (*Id.*) On February 24, 2025, Plaintiff filed the Amended Complaint, which is identical in substance to the original Complaint but redacts certain information as directed by the Court. (Am. Compl., Dkt. 19; 2/12/2025 Dkt. Order (directing redactions).) On March 11, 2025, Plaintiff responded to the Order to Show Cause. (OTSC Resp., Dkt. 21-1.) On March 25, 2025, Defendants filed their motion to dismiss the Amended Complaint for failure to state a claim. (Mot., Dkt. 22.) On April 14, 2025, Plaintiff filed his response. (Pl. Resp., Dkt. 23.)

## LEGAL STANDARD

"To survive a motion to dismiss" pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023) (quoting *id.*). "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quoting *id.*). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Pleadings submitted by *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court is required to read a *pro se* plaintiff's complaint liberally and interpret it as raising the strongest arguments it suggests. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citing *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). But even under this liberal standard, a court "cannot invent factual allegations that [the *pro se* plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Finally, a district court must dismiss an IFP action if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Reading Plaintiff's Amended Complaint and his responsive pleadings most liberally, Plaintiff alleges violations of his Fourth, Fifth, Fourteenth, and First Amendment rights; common law and NYCHRL claims; and a *Monell* claim against the City.[9] (Am. Compl., Dkt. 19, at ECF 9–10; OTSC, Dkt. 21, at 5.) As Defendants are a city government entity and one of its employees,

---

[9] While Plaintiff generally does not distinguish his claims between the Defendants, Plaintiff does bring a *Monell* claim specifically against the City.

5

Plaintiff must plausibly allege his constitutional claims under Section 1983, which requires a showing "(1) that the [D]efendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).[10]

## I. Claims against Defendant Rosario

Plaintiff brings his constitutional claims against Defendant Rosario, all stemming from the traffic stop on July 8, 2025. (*See* Am. Compl., Dkt. 19.) All fail.

### A. Fourth Amendment Claim

Plaintiff alleges that the July 8, 2025 traffic stop was in violation of the Fourth Amendment. (Am. Compl., Dkt. 19, at ECF 9.) "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Gomez*, 877 F.3d 76, 85–86 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). In order for this temporary detention to comport with the Fourth Amendment, "an officer making a traffic stop must have probable cause or reasonable suspicion that the person

---

[10] In his show-cause response, Plaintiff repeatedly references Defendants' "burden of proof." (*See, e.g.*, OTSC Resp., Dkt. 21-1, at 7.) However, for Plaintiff's claims to survive dismissal, the "complaint must contain 'enough factual matter (taken as true)' that is suggestive of, 'not merely consistent with,' the alleged wrongdoing." *7 West 57th St. Realty. Co. v. Citigroup, Inc.*, 771 F. App'x 498, 501 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 556–57). The Court notes that Plaintiff's show-cause response includes a significant number of *legal* citations, some of which are undeniably relevant. (OTSC Resp., Dkt. 21-1.) Still, at this stage, and as directed by the Court in its show-cause order, Plaintiff must plead *facts* sufficient to establish a cause of action. (*See* 2/12/2025 Dkt. Order.)

stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Id.* at 86 (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)).

Plaintiff has failed to allege that Defendant Rosario lacked probable cause or reasonable suspicion to stop him on July 8, 2025. Defendant Rosario's sworn statement from the traffic stop, which Plaintiff attached to his Amended Complaint and is thus incorporated by reference into the Complaint, *Hu*, 927 F.3d at 88, describes Plaintiff as "creat[ing] serious risk of [personal injury] or death by driving into oncoming traffic and overtaking multiple vehicles," (Am. Compl., Dkt. 19, at ECF 18); *Jimenez v. City of Cohoes Police Dep't,* No. 23-CV-0955, 2024 WL 1551149, at *1 (2d Cir. Apr. 10, 2024) (finding an officer had reasonable suspicion to make a traffic stop because it was "apparent 'on the face of the complaint'— to which [plaintiff] attached the sworn statement of the police officer who stopped him — that the officer observed [plaintiff] commit a traffic violation" (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998))). Plaintiff does not contest that he had passed two vehicles, which caused him to drive "into oncoming traffic" at the time he was stopped by Defendant Rosario.[11] (Am. Compl., Dkt. 19, at ECF 18; *see id.* at ECF 35 (Plaintiff explaining that NYPD "questioned [him] as to his driving [past] a garbage truck as well as a black SUV"); *Johnson El v. Bird*, No. 19-CV-5102 (CS), 2020 WL 5124920, at *5 (S.D.N.Y. Aug. 31, 2020) (dismissing false arrest claim where plaintiff failed to allege that he had not engaged in the conduct he was stopped for), *aff'd sub nom. Johnson El v. Chambers*, No. 20-CV-3377, 2021 WL 4484929 (2d Cir. Oct. 1, 2021). Given these alleged facts,

---

[11] Plaintiff does argue that he was "exonerated" and therefore this makes the stop itself illegal. (OTSC Resp., Dkt. 21-1, at 8.) While the concept of exoneration is more relevant for Plaintiff's malicious prosecution claims than his Fourth Amendment claims, the Court notes that Plaintiff was not, in fact, exonerated by the traffic court but rather accepted adjournment in contemplation of dismissal pursuant to NYCPL § 170.55, (Am. Compl., Dkt. 19, at ECF 14), which is neither a conviction nor a finding of innocence, *Cabello-Setlle v. Scott*, No. 21-CV-7477 (NSR), 2024 WL 308212, at *2 n.1 (E.D.N.Y. Jan. 26, 2024).

7

Defendant Rosario's decision to stop Plaintiff was supported by probable cause that Plaintiff had committed a traffic violation and was thus reasonable.

Plaintiff has also failed to allege that the duration of the traffic stop "exceed[ed] the time needed to handle the matter for which the stop was made" and therefore "violates the Constitution's shield against unreasonable seizures." *Gomez*, 877 F.3d at 88 (quoting *Rodriguez v. United States*, 575 U.S. 348, 350 (2015)). Plaintiff alleges that the traffic stop lasted approximately ten minutes, (Am. Compl., Dkt. 19, at ECF 9), which is a reasonable amount of time to issue a summons, *cf. United States v. Bailey*, 743 F.3d 322, 336 (2d Cir. 2014) (finding a ten-minute stop constitutional during an investigatory traffic stop).

Therefore, Plaintiff's Fourth Amendment claim against Defendant Rosario fails.

**B.      Fifth Amendment Claim**

Plaintiff also alleges "deprivation of property interests" and "deprivation of property rights," which the Court construes as due process claims under the Fifth Amendment. *See Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733 (KAM) (MDG), 2013 WL 5300721, at *12 (E.D.N.Y. Sep. 19, 2013) (construing *pro se* plaintiff's deprivation of property claim under the Due Process Clause of the Fifth Amendment). In evaluating such claims, the Court must determine "whether the plaintiff has a property or liberty interest protected by the Constitution," and if so, "whether the government deprived the plaintiff of that interest without due process." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)). Here, it is entirely unclear from Plaintiff's pleadings exactly what property interest or right Plaintiff bases his due process claims on. To the extent this interest is his driver's license, which the NYPD took for the duration of the traffic stop, this license was neither revoked nor taken by the NYPD, and so Plaintiff was not deprived of this interest. (*See* Am. Compl., Dkt. 19, at

8

ECF 10 (alleging only that plaintiff has a right to be able to drive without harassment).)  To the extent Plaintiff bases his due process claims on "cost[s] . . . now and into the future" because the traffic-stop "information will be unfairly on the Plaintiff's records," (*id.*), Defendants state that because Plaintiff's reckless driving charge was dismissed pursuant to NYCPL § 170.55, it was sealed pursuant to NYCPL § 160.50, (Mot., Dkt. 22, at 6).[12]  Plaintiff does not contest this in his response to Defendants' motion to dismiss.  (*See* Pl. Resp., Dkt. 23, at 6–7 (responding to the relevant pages of Defendants' motion).)

Thus, even reading Plaintiff's pleadings liberally, the Court can find no cognizable property interest of which Plaintiff was deprived, and so his Fifth Amendment claim against Defendant Rosario fails.

### C.  Fourteenth Amendment Claim

Plaintiff also brings a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment.  (Am. Compl., Dkt. 19, at ECF 9.)

> To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  Plaintiff states that he is Black and an immigrant, which he alleges are the bases for his harassment by the NYPD.  (Am. Compl., Dkt. 19, at ECF 9.)  However, as with his other constitutional claims, Plaintiff fails to provide *any* facts to

---

[12] *Butts v. New York City Dep't of Educ.*, No. 22-CV-4418 (OEM) (CLP), 2024 WL 4350430, at *1 (E.D.N.Y. Sep. 30, 2024), *recon. denied sub nom. Butts v. Kelch*, 2025 WL 388856 (E.D.N.Y. Feb. 4, 2025) (quoting *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 254 (E.D.N.Y. 2015).

9

support his claim of selective treatment or that any such selective treatment was based on his race or immigration status. Plaintiff's "wholly conclusory and unsupported" Equal Protection claim therefore also fails. *See Gordon v. City of New York*, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *28–29 (E.D.N.Y. Mar. 29, 2012) (dismissing plaintiff's "wholly conclusory and unsupported" Equal Protection claim because he had not "alleged any disparity in treatment between himself and another person").

### D. First Amendment

As part of his generalized allegation that the NYPD has been "careful[ly] targeting and profiling" him, Plaintiff alleges that the July 8, 2023 traffic stop was in retaliation for his prior lawsuits against the NYPD. (Am. Compl., Dkt. 19, at ECF 9–10.) Construing this claim most liberally, Plaintiff appears to be bringing a First Amendment claim. *See Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (explaining that the First Amendment generally "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech" (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006))). But to successfully plead a retaliatory arrest, Plaintiff must "plead and prove the absence of probable cause for the [retaliatory] arrest." *Id.* at 400. As the Court has found probable cause for Plaintiff's traffic stop, *see supra*, this claim fails.

### E. Other Claims

Plaintiff also alleges excessive force, (Am. Compl., Dkt. 19, at 9–10)), false arrest, malicious prosecution, and negligence, (OTSC Resp., Dkt. 21-1, at 3, 6).[13] Given the paucity of factual allegations to support these claims, and given that many of these claims are subsumed in

---

[13] Although Plaintiff also claims that Defendants subjected him to "harassment," the Court construed that allegation as being part of his Fourteenth Amendment unequal treatment claim, which is dismissed.

10

the constitutional claims discussed *supra*, the Court analyzes them only briefly below and dismisses them all, as well.

### 1. Excessive Force

Plaintiff brings an "excessive force" claim based on NYPD agents "exceeding their lawful authority." (Am. Compl., Dkt. 19, at ECF 10.) Plaintiff's allegations center on whether or not the NYPD agents misused their power and authority and never alleges any use of *physical* force by Defendant Rosario or other NYPD agents. *See Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) ("To establish a claim of excessive force, 'a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting [them], objectively unreasonable under Fourth Amendment standards.'" (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990))). This claim must therefore also fail.

### 2. False Arrest

Plaintiff alleges what the Court liberally construes as a common law false arrest claim primarily in his show-cause response. (OTSC Resp., Dkt. 21-1, at 3.) While Plaintiff provides a number of legal cites to support this claim, he provides no supporting factual allegations. There is nothing in the Complaint or Plaintiff's show-cause response indicating that Plaintiff was arrested on July 8, 2023. *See Guadagni v. New York City Transit Auth.*, No. 08-CV-3163 (CPS) (SMG), 2009 WL 1910953, at *4 (E.D.N.Y. June 30, 2009) (explaining that, to state a claim for false arrest, a plaintiff must show, *inter alia*, intentional confinement (citing *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003)), *aff'd*, 387 F. App'x 124 (2d Cir. 2010)). And as previously discussed, the stop conducted by Defendant Rosario of Plaintiff in his car that day was reasonable and supported by probable cause. Plaintiff's false arrest claim thus fails.

11

### 3. Malicious Prosecution

Plaintiff further alleges malicious prosecution in his show-cause response (although not in his Complaint). (OTSC Resp., Dkt. 21-1, at 6.) "In New York, probable cause is an absolute defense to . . . malicious prosecution." *Jones v. City of New York*, 988 F. Supp. 2d 305, 311 (E.D.N.Y. 2013) (first citing *Maron v. Cnty of Albany,* 166 F. App'x 540, 541 (2d Cir. 2006); and then citing *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir. 2006)). "This is true whether that action is brought under state law or under [Section] 1983." *Maron,* 166 F. App'x at 541. As the Court has found that Defendant Rosario had probable cause to stop Plaintiff, *see supra*, the Court declines to further analyze this claim, which fails.

### 4. Negligence Claim under NYCHRL

Plaintiff also seeks punitive damages under NYCHRL for alleged negligence. (OTSC, Dkt. 21-1, at 5.) "[T]he standard for determining punitive damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 43 (2d Cir. 2025) (quoting *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017)). The New York Court of Appeals has required "an appropriate showing of heightened culpability for [an award of] punitive damages." *Id.* (quoting *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017)). Plaintiff has provided no evidence of discrimination, let alone evidence of heightened culpability, and thus his negligence claim fails.

\*　　\*　　\*

Accordingly, Plaintiff's claims against Defendant Rosario are dismissed.

## II. Claims against the City

In order to sustain constitutional claims against the City, Plaintiff must show the existence of a policy or custom adopted by the City that caused injury to Plaintiff, and a direct causal

12

connection between that policy or custom and the deprivation of a constitutional right. *Monell*, 436 U.S. at 694; *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Because Plaintiff has failed to adequately plead any of his constitutional claims, his *Monell* claim against the City necessarily fails. However, even if he had sufficiently pled a constitutional claim, his *Monell* claim still fails because he does not show any official policy or custom directly tied to his constitutional complaints.

A plaintiff seeking to sufficiently allege that an affirmative municipal policy exists "must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)). Single incidents are insufficient to impose *Monell* liability "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). A collection of such incidents, even with similar facts, is still insufficient absent proof of municipal policy. *Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (finding that three related incidents "fell far short of showing a policy, custom, or usage of officers"); *Giaccio v. City of New York*, 308 F. App'x 470, 471–72 (2d Cir. 2009) (dismissing *Monell* claim when plaintiff could identify only four incidents); *Price v. City of New York*, No. 15-CV-5871 (KPF), 2018 WL 3117507, at *19 (S.D.N.Y. June 25, 2018) ("[A]llegations of three similar constitutional violations do not allow the Court plausibly to infer the existence of a widespread custom or practice that can be attributed to the City." (collecting cases)); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 316–17 (E.D.N.Y. 2016) (observing, in

dismissing *Monell* claim, that "courts in [the Second] Circuit have rejected the notion that two, three[,] or even four incidents will support such an inference" (collecting cases)). "[A] plaintiff must allege 'sufficient factual detail[]' and not mere 'boilerplate allegations'" for their *Monell* claim to survive a motion to dismiss. *Broomes v. City of New York*, No. 22-CV-2807 (PKC) (MMH), 2024 WL 3823031, at *9 (E.D.N.Y. Aug. 13, 2024) (quoting *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011)).

To support his *Monell* claim, Plaintiff alleges a pattern of "illegal" traffic stops and tickets issued to him by the NYPD over the course of approximately seven years. (Pl. Resp., Dkt. 23, at 2–3.)[14] Plaintiff appears to have filed at least two other cases against the City in this district and in the Southern District of New York ("SDNY").[15] According to Plaintiff's filings in this matter, these other cases include "a plethora of examples" that show a "practice, norm, and pattern of some City of New York agents against/towards the Plaintiff." (*Id.* at 2.) Indeed, Plaintiff's SDNY lawsuit similarly alleged "violations of his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution" by NYPD officers. *Richards*, 2024 WL 4263004, at *1. But the vast majority of Plaintiff's claims in those cases were dismissed; only one claim

---

[14] While Plaintiff's Amended Complaint and show-cause response only cursorily reference a "practice, norm, and pattern of the NYPD . . . profiling the Plaintiff," (Am. Compl., Dkt. 19, at ECF 9; *see also* OTSC Resp., Dkt. 21-1, at 3 (describing the purported "profiling[,] patterns, practice, [and] custom[]" of Defendants "in . . . targeting the Plaintiff")), Plaintiff's response to Defendants' motion to dismiss provides the clearest view of his *Monell* allegations, (Pl. Resp., Dkt. 23, at 2–3).

[15] These are *Richards v. City of New York*, No. 20-CV-3348 (RA), 2024 WL 4263004 (S.D.N.Y. Sep. 23, 2024) (dismissing Plaintiff's claims), (*see* Pl. Resp., Dkt. 23, at 2); and likely *Richards v. N.Y.C. Health & Hosps. Corp.*, No. 21-CV-6027 (PKC) (MMH), 2023 WL 7611560 (E.D.N.Y. Nov. 15, 2023) (same), (*see id.* at 3). The cite provided by Plaintiff for the second case, "21CV621," (*id.*), does not correspond to any cases relevant to Plaintiff, and so the Court assumes Plaintiff refers to 21-CV-6027, which was filed on October 20, 2021, the same date Plaintiff identifies in his filings, (*id.*).

against a single NYPD officer in the SDNY case moved past the motion to dismiss stage, though it was ultimately dismissed based on Plaintiff's failure to prosecute pursuant to Rules 37(b) and 41(b). *See id.* Therefore, these other lawsuits fail to provide a sufficient factual basis for Plaintiff's *Monell* claim. And as Plaintiff provides very few additional factual allegations in his briefings in the instant matter, the Court simply cannot plausibly infer any policy, pattern, or practice by the City to retaliate against or harass Plaintiff, even if Plaintiff had adequately pled his constitutional claims in this case, which he has not.

\*   \*   \*

Plaintiff's claims against the City are therefore dismissed.

### III.  Leave to Amend

Ordinarily, because of Plaintiff's *pro se* status, the Court might allow Plaintiff to seek leave to file a second amended complaint. *Saunders v. Queensborough Cmty. Coll.*, No. 13-CV-5617 (PKC) (RML), 2015 WL 5655719, at *10 (E.D.N.Y. Sep. 24, 2015) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (quoting *Hayden v. Cnty of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999))). But the Court declines to do so here. Plaintiff has already amended his Complaint once; the Court gave him the additional opportunity— if not, directed him—to supplement his Amended Complaint with additional facts, in response to Defendants' motion to amend, accompanied by a warning that his Complaint was so devoid of facts that it risked being dismissed *sua sponte*. (*See* 2/12/2025 Dkt. Order.) The Court therefore finds that yet another amendment of the Complaint would be futile. *See Smith v. NYS OMH S. Beach Psychiatric Ctr.*, No. 23-CV-4401 (PKC) (LB), 2024 WL 730492, at *4 (E.D.N.Y. Feb. 22, 2024) (denying *pro se* party leave to amend when "it would be futile" (citations omitted)), *appeal dismissed*, No. 24-CV-0743, 2024 WL 4336995 (2d Cir. Sep. 11, 2024).

15

**CONCLUSION**

Accordingly, for the reasons stated above, Plaintiff's Amended Complaint is dismissed in its entirety pursuant to Rule 12(b)(6). As Plaintiff is proceeding IFP, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 18, 2025
       Brooklyn, New York